# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## GREEN BAY DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. <u>1:18-cv-651</u> |
| C. REISS COAL COMPANY LLC, | ) | |
| Defendant | ) | |

## COMPLAINT

The United States of America, by the authority of the Attorney General of the United States and through the undersigned attorneys, acting on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), alleges as follows:

<u>NATURE OF THE ACTION</u>

1.      This is a civil action brought by the United States against C. Reiss Coal Company LLC ("C. Reiss") to obtain injunctive relief and civil penalties for violations of the Clean Air Act ("CAA"), 42 U.S.C. § 7401 *et seq.* C. Reiss has refused to install air pollution monitors at its bulk material handling facilities in Green Bay ("Green Bay Facility") and Duluth, Minnesota ("Duluth Facility"). C. Reiss handles and stores many different types of materials at its Facilities in large outdoor storage piles, including coal, petroleum coke ("petcoke"), and metallurgical coke ("metcoke"). EPA inspections have shown that the storage and processing of these materials can create particulate matter pollution affecting the surrounding community. Pursuant to Section 114 of the CAA, 42 U.S.C. § 7414, EPA requested the installation of pollution

- 1 -

monitors to determine whether C. Reiss is emitting particulate matter pollution at the Facilities at levels that violate the requirements of the CAA.

JURISDICTION, VENUE, AND NOTICE

2.      This Court has jurisdiction over the subject matter of this action pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1331, 1345, and 1355.

3.      Venue is proper in this District pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391 and 1395, because the alleged violations occurred and continue to occur within this District at a facility located in Green Bay, Wisconsin.

4.      The United States has provided notice of the commencement of this action to the Wisconsin Department of Natural Resources and the Minnesota Pollution Control Agency as required by CAA Section 113(b), 42 U.S.C. § 7413(b).

PARTIES

5.      Plaintiff, the United States of America, is acting by authority of the Attorney General of the United States and through the undersigned attorneys, on behalf of the Administrator of the EPA.  Authority to bring this action is vested in the Attorney General of the United States by Section 305 of the CAA, 42 U.S.C. § 7605, and pursuant to 28 U.S.C. §§ 516 and 519.

6.      C. Reiss is a private corporation incorporated under the laws of Delaware.  C. Reiss is headquartered in Green Bay, Wisconsin with bulk material handling facilities in Green Bay; Duluth, Minnesota; and Escanaba, Michigan.

7.      C. Reiss is a corporate entity and therefore a "person" within the meaning of Section 302(e) of the CAA, 42 U.S.C. §7602(e).

- 2 -

## STATUTORY BACKGROUND

8.     Congress enacted the CAA "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population."  42 U.S.C. § 7401(b)(1).

9.     The CAA is a strict liability statute because Congress found such liability to be essential to meet the purpose of the Act to protect and improve the quality of the nation's air.

### National Ambient Air Quality Standards

10.     Section 109 of the CAA, 42 U.S.C. § 7409, required EPA to establish national ambient air quality standards ("NAAQS") that specify the maximum permissible concentration of air pollutants in different areas of the country.

11.     One of these air pollutants is particulate matter, or "PM."  PM can travel through the air and become embedded in human lungs, and once embedded can also travel to the bloodstream.  Exposure to PM pollution has been linked to decreased lung function, aggravated asthma, and premature death in people with heart or lung disease.

12.     PM varies in size.  EPA has established NAAQS for PM that is equal to or less than 10 microns in diameter ("$PM_{10}$").

13.     The NAAQS for $PM_{10}$ is a concentration in the air of 150 micrograms per cubic meter ("$\mu g/m^3$"), averaged over 24 hours.  The standard is attained when the expected number of days per calendar year with a 24-hour average $PM_{10}$ concentration above 150 $\mu g/m^3$ is equal to or less than one.  If two or more days experience a $PM_{10}$ concentration above 150 $\mu g/m^3$, then the $PM_{10}$ NAAQS is not met.

- 3 -

<u>Wisconsin and Minnesota State Implementation Plans</u>

14.    The CAA requires states to meet NAAQS by developing plans, called State

Implementation Plans ("SIPs"), which impose regulatory requirements on individual sources of

air pollution.  42 U.S.C. §§ 7410(a)(1), (a)(2).

15.    Pursuant to Section 110 of the CAA, 42 U.S.C. § 7410, Wisconsin and Minnesota

have each submitted to EPA various regulations codified in Chapter NR 400 of the Wisconsin

Administrative Code and Chapter 7000 of the Minnesota Administrative Rules that have been

approved by EPA and which, taken together, constitute the SIPs for the States of Wisconsin and

Minnesota, respectively.

16.    Pursuant to Section 113 of the CAA, 42 U.S.C. § 7413(a) and (b), SIP

requirements approved by U.S. EPA are federally enforceable.  Federal regulation 40 C.F.R.

§ 52.23 states, in part, "failure to comply with any approved regulatory provision of a SIP

renders the person or the governmental entity so failing to comply in violation of a requirement

of an applicable implementation plan and subject to enforcement action" under Section 113 of

the CAA, 42 U.S.C. § 7413.  40 C.F.R. § 52.23.

17.    The federally-approved Wisconsin SIP states, in relevant part, that "no person

may cause, allow, or permit particulate matter to be emitted into the ambient air which

substantially contributes to exceeding of an air standard, or creates air pollution."  Wis. Admin.

Code NR § 415.03.

18.    The federally-approved Minnesota SIP states, in relevant part, that "No person

shall emit any pollutant in such an amount or in such a manner as to cause or contribute to a

violation of any Minnesota ambient air quality standard under part 7009.0080 beyond the

- 4 -

person's property line, provided however, that in the event the general public has access to the person's property or portion thereof, the ambient air quality standards apply in those locations." Minn. R. 7009.0020.

EPA's Section 114 Authority

19.     Section 114(a) of the CAA, 42 U.S.C. § 7414(a), authorizes EPA to require the installation of monitors at a facility.  Section 114(a) states, in part:

> For the purpose . . . (ii) of determining whether any person is in violation of any such standard or any requirement of [a SIP], or (iii) carrying out any provision of this chapter . . . the Administrator may require any person who owns or operates any emission source . . . on a one-time, periodic or continuous basis to . . . (C) install, use, and maintain such monitoring equipment . . . and (G) provide such other information as the Administrator may reasonably require.

20.     Section 113(b) of the CAA, 42 U.S.C. § 7413(b), authorizes the United States to initiate a judicial enforcement action for a permanent or temporary injunction, and/or for the assessment of a civil penalty of up to $25,000 per day for each violation whenever any person violates any requirement of the CAA.

21.     The Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by the Debt Collection Improvement Act, 31 U.S.C. § 3701, required the United States to adjust penalties for inflation on a periodic basis.  Pursuant to 40 C.F.R. Part 19, the United States may seek civil penalties of up to $37,500 per day for each such violation occurring on or after January 13, 2009 through November 2, 2015; up to $93,750 per day for each such violation occurring on or after November 3, 2015 through January 14, 2017; up to $95,284 per day for each such violation occurring on or after January 15, 2017 through January 14, 2018; and up to $97,229 per day for each such violation occurring on or after January 15, 2018.

- 5 -

## GENERAL ALLEGATIONS

### C. Reiss Facilities

22.     C. Reiss owns and operates the Green Bay Facility, which is a bulk material handling facility located at 111 West Mason Street, Green Bay, Wisconsin.  The Green Bay Facility receives coal and petcoke from river-going vessels, railcars, and trucks and also receives paper pellets via truck.  C. Reiss stores these materials in large open-air piles at the Green Bay Facility.

23.     C. Reiss owns and operates the Duluth Facility, which is a bulk material handling facility located at Duluth Dock, 50th Avenue West and LeSure Avenue, Duluth, Minnesota.  The Duluth Facility receives limestone, salt, coal, and petcoke from river-going vessels, rail cars, and trucks.  C. Reiss occasionally processes the material at the Duluth Facility by crushing larger pieces into smaller pieces or screening out larger pieces of material.  C. Reiss stores the materials in large open-air piles at the Duluth Facility.

### EPA Section 114 Monitor Requests

24.     On March 13, 2015 EPA issued a request under Section 114 of the CAA to C. Reiss regarding C. Reiss's Green Bay Facility ("Green Bay Section 114 Request"). On March 4, 2015, EPA issued a request under Section 114 of the CAA to C. Reiss regarding C. Reiss's Duluth Facility ("Duluth Section 114 Request").  The Section 114 Requests are attached as Attachments 1 and 2 to the Complaint.

25.     Among other things, the Section 114 Requests required C. Reiss to install, operate, and maintain $PM_{10}$ air monitors ("$PM_{10}$ Air Monitors") and $PM_{10}$ filter-based samplers ("$PM_{10}$ Filter-Based Samplers") at each Facility.  $PM_{10}$ Air Monitors measure the real-time

- 6 -

concentration of $PM_{10}$ in the air. $PM_{10}$ Filter-Based Samplers collect samples of the $PM_{10}$ material in the air for analysis of their chemical composition.

26.     The Section 114 Requests each required C. Reiss to submit proposed monitoring site locations for the $PM_{10}$ Air Monitors and $PM_{10}$ Filter-Based Sampler for the respective Facilities within 30 days of receipt of the Requests.

27.     The Section 114 Requests each required C. Reiss to install, operate, and maintain monitors at the respective Facilities within 30 days of EPA's approval of C. Reiss's proposed monitoring locations.

28.     The Section 114 Requests each set forth various requirements related to the installation, operation, and maintenance of the monitors.

29.     C. Reiss received the Green Bay Section 114 Request on March 17, 2015. C. Reiss received the Duluth Section 114 Request on March 13, 2015.

30.     By letter dated May 12, 2015, C. Reiss objected to the Section 114 Requests' monitoring requirements.

31.     As of the date of this Complaint, C. Reiss has not submitted proposed monitoring site locations and has not installed $PM_{10}$ Air Monitors or $PM_{10}$ Filter-Based Samplers at either Facility.

32.     In repeated attempts to obtain C. Reiss's compliance, EPA met with C. Reiss and sent additional letters and electronic communications. EPA explained that the requested monitors were relevant to the lawful purpose of carrying out its responsibilities under the CAA, including determining C. Reiss's compliance with the Wisconsin SIP and the Minnesota SIP.

- 7 -

## FIRST CLAIM FOR RELIEF

### Failure to Comply with Green Bay Section 114 Request

33.     Paragraphs 1 through 32 are re-alleged and incorporated by reference.

34.     As owner and operator of the Green Bay Facility, C. Reiss is a "person who owns or operates [an] emission source," as set forth in Section 114(a)(1) of the CAA, 42 U.S.C. § 7414(a)(1).

35.     EPA issued the Green Bay Section 114 Request pursuant to its lawful, statutory authority under Section 114 of the CAA, 42 U.S.C. § 7414.

36.     The Green Bay Section 114 Request requires C. Reiss to install, operate, and maintain $PM_{10}$ Air Monitors and $PM_{10}$ Filter-Based Samplers at the Green Bay Facility.

37.     The Green Bay Section 114 Request was issued for the lawful purposes of carrying out EPA's responsibilities under the CAA, including determining whether C. Reiss is in violation of the Wisconsin SIP.

38.     The monitoring requirements of the Green Bay Section 114 Request are reasonable and relevant to such lawful purposes.

39.     C. Reiss is strictly liable under Section 114(a) for refusing to comply, in whole or part, with the monitoring requirements of the Green Bay Section 114 Request.

40.     C. Reiss's failure to comply with the Green Bay Section 114 Request fully and completely subjects C. Reiss to injunctive relief and a daily civil penalty up to the amounts set forth in Paragraph 21.

- 8 -

## SECOND CLAIM FOR RELIEF

### Failure to Comply with Duluth Section 114 Request

41.     Paragraphs 1 through 32 are re-alleged and incorporated by reference.

42.     As owner and operator of the Duluth Facility, C. Reiss is a "person who owns or operates [an] emission source," as set forth in Section 114(a)(1) of the CAA, 42 U.S.C. § 7414(a)(1).

43.     EPA issued the Duluth Section 114 Request pursuant to its lawful, statutory authority under Section 114 of the CAA, 42 U.S.C. § 7414.

44.     The Duluth Section 114 Request requires C. Reiss to install, operate, and maintain PM$_{10}$ Air Monitors and PM$_{10}$ Filter-Based Samplers at the Duluth Facility.

45.     The Duluth Section 114 Request was issued for the lawful purposes of carrying out EPA's responsibilities under the CAA, including determining whether C. Reiss is in violation of the Minnesota SIP.

46.     The monitoring requirements of the Duluth Section 114 Request are reasonable and relevant to such lawful purposes.

47.     C. Reiss is strictly liable under Section 114(a) for refusing to comply, in whole or part, with the monitoring requirements of the Duluth Section 114 Request.

48.     C. Reiss's failure to comply with the Duluth Section 114 Request fully and completely subjects C. Reiss to injunctive relief and a daily civil penalty up to the amounts set forth in Paragraph 21.

- 9 -

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff the United States of America respectfully requests that this Court provide the following relief:

1.      A preliminary and/or permanent injunction ordering C. Reiss to comply with the monitoring requirements of the Section 114 Requests;

2.      A judgment assessing civil penalties against C. Reiss and in favor of the United States, of up to $37,500 per day for each such violation occurring on or after January 13, 2009 through November 2, 2015; up to $93,750 per day for each such violation occurring on or after November 3, 2015 through January 14, 2017; up to $95,284 per day for each such violation occurring on or after January 15, 2017 through January 14, 2018; and up to $97,229 per day for each such violation occurring on or after January 15, 2018.

3.      An award to the United States of its respective costs and disbursements in this action; and

4.      Such other relief as this Court deems appropriate.

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA

WILLIAM D. BRIGHTON
Assistant Chief, Environmental Enforcement
Section
Environment and Natural Resources Division
U.S. Department of Justice

Date:   April 25, 2018

NIGEL B. COONEY
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division

- 10 -

U.S. Department of Justice
P.O. Box 7611
Washington, DC  20044-7611
Tel: 202-514-3145
Fax: 202-616-6584
nigel.cooney@usdoj.gov


MATTHEW D. KRUEGER
United States Attorney

By:
SUSAN M. KNEPEL
Assistant United States Attorney
Wisconsin Bar No. 1016482
Federal Building, Room 530
517 East Wisconsin Avenue
Milwaukee, WI  53202
Telephone: (414) 297-1723
Fax: (414) 297-4394
Susan.knepel@usdoj.gov

Of Counsel:
NICOLE CANTELLO
Associate Regional Counsel
EPA Region 5

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**
**GREEN BAY DIVISION**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| C. REISS COAL COMPANY LLC, | ) |
|  | ) |
| Defendant | ) |
| _____ | ) |

**COMPLAINT EXHIBIT 1**

**CLEAN AIR ACT SECTION 114 INFORMATION REQUEST**
**C. REISS COAL CO.**

**GREEN BAY FACILITY**

IN THE MATTER OF:

The C. Reiss Coal Co.
111 West Mason Street
Green Bay, Wisconsin 54303

ATTENTION:

Christian Zuidmulder
Facility Manager

### Request to Provide Information Pursuant to the Clean Air Act

The U.S. Environmental Protection Agency is requiring The C. Reiss Coal Co. (C. Reiss or you) to submit certain information about the facility at 111 West Mason Street, Green Bay, Wisconsin (the Facility). Appendix A provides the instructions needed to answer this information request, including instructions for electronic submissions. Appendix B specifies the information that you must submit. You must send this information to us according to the schedule in Appendix B.

We are issuing this information request under Section 114(a) of the Clean Air Act (the CAA), 42 U.S.C. § 7414(a). Section 114(a) authorizes the Administrator of EPA to require the submission of information. The Administrator has delegated this authority to the Director of the Air and Radiation Division, Region 5.

C. Reiss owns and operates an emission source at the Green Bay, Wisconsin, facility. We are requesting this information to determine whether your emission source is complying with the CAA, including but not limited to the Wisconsin State Implementation Plan.

C. Reiss must submit all required information under an authorized signature with the following certification:

I certify under penalty of law that I have examined and am familiar with the information in the enclosed documents, including all attachments. Based on my inquiry of those individuals with primary responsibility for obtaining the information, I certify that the statements and information are, to the best of my knowledge and belief, true and complete. I am aware that there are significant penalties for knowingly submitting false statements and information, including the possibility of fines or imprisonment pursuant to Section 113(c)(2) of the Clean Air Act and 18 U.S.C. §§ 1001 and 1341.

As explained more fully in Appendix C, you may assert a claim of business confidentiality under 40 C.F.R. Part 2, Subpart B for any part of the information you submit to us. Information subject to a business confidentiality claim is available to the public only to the extent, and by means of the procedures, set forth at 40 C.F.R. Part 2, Subpart B. If you do not assert a business confidentiality claim when you submit the information, EPA may make this information available to the public without further notice. You should be aware, moreover, that pursuant to Section 114(c) of the CAA and 40 C.F.R. § 2.301(a) and (f), emissions data, standards and limitations are not entitled to confidential treatment and shall be made available to the public notwithstanding any assertion of a business confidentiality claim. Appendix C provides additional information regarding the meaning and scope of the term "emissions data."

This information request is not subject to the Paperwork Reduction Act, 44 U.S.C. § 3501 *et seq.*, because it seeks collection of information from C. Reiss, a specific entity, as part of a discrete administrative action or investigation.

We may use any information submitted in response to this request in an administrative, civil, or criminal action.

Failure to comply fully with this information request may subject C. Reiss to an enforcement action under Section 113 of the CAA, 42 U.S.C. § 7413.

2

You should direct any questions about this information request to Ray Cullen at (312) 886-0538 or at cullen.raymond@epa.gov.

_3/13/15_
_____
Date

George T. Czerniak
Director
Air and Radiation Division

3

## Appendix A

When providing the information requested in Appendix B, use the following instructions and definitions.

### Instructions

1. Provide a separate narrative response to each question and subpart of a question set forth in Appendix B.

2. Precede each answer with the number of the question to which it corresponds and at the end of each answer, identify the person(s) who provided information used or considered in responding to that question, as well as each person consulted in the preparation of that response.

3. Indicate on each document produced, or in some other reasonable manner, the number of the question to which it corresponds.

4. When a response is provided in the form of a number, specify the units of measure of the number in a precise manner.

5. Where information or documents necessary for a response are neither in your possession nor available to you, indicate in your response why the information or documents are not available or in your possession, and identify any source that either possesses or is likely to possess the documents or information.

6. If information not known or not available to you as of the date of submission later becomes known or available to you, you must supplement your response. Moreover, should you find at any time after the submission of your response that any portion of the submitted information is false or incorrect, you must notify EPA as soon as possible.

### Electronic Submissions

To aid in our electronic recordkeeping efforts, we request that you provide all documents responsive to this information request in an electronic format according to paragraphs 1 through 6, below. These submissions are in lieu of hard copy.

1. Provide all responsive documents in Portable Document Format (PDF) or similar format, unless otherwise requested in specific questions. If the PDFs are scanned images, perform at least Optical Character Recognition (OCR) for "image over text" to allow the document to be searchable. Submitters providing secured PDFs should also provide unsecured versions for EPA use in repurposing text.

2. When specific questions request data in electronic spreadsheet form, provide the data and corresponding information in editable Excel or Lotus format, and not in image format. If Excel or Lotus formats are not available, then the format should

allow for data to be used in calculations by a standard spreadsheet program such as Excel or Lotus.

3. Provide submission on physical media such as compact disk, flash drive, or other similar item.

4. Provide a table of contents for each compact disk or flash drive containing electronic documents submitted in response to our request so that each document can be accurately identified in relation to your response to a specific question. *We recommend the use of electronic file folders organized by question number.* In addition, each compact disk or flash drive should be labeled appropriately (e.g., Company Name, Disk 1 of 4 for Information Request Response, Date of Response).

5. Documents claimed as confidential business information (CBI) must be submitted on separate disks/drives apart from the non-confidential information. This will facilitate appropriate records management and appropriate handling and protection of the CBI. Please follow the instructions in Appendix C for designating information as CBI.

6. Certify that the attached files have been scanned for viruses and indicate what program was used.

### Definitions

All terms used in this information request have their ordinary meaning unless such terms are defined in the CAA, 42 U.S.C. §§ 7401 *et seq.*

1. The terms "document" and "documents" shall mean any object that records, stores, or presents information, and includes writings, e-mail, memoranda, records, or information of any kind, formal or informal, whether wholly or partially handwritten or typed, whether in computer format, memory, or storage device, or in hardcopy, including any form or format of these. If in computer format or memory, each such document shall be provided in translation to a form useable and readable by EPA, with all necessary documentation and support. All documents in hard copy should also include attachments to or enclosures with any documents.

2. The term "ESI" or "electronically stored information" includes any type of information that is stored in an electronic form and includes but is not limited to e-mails, web pages, word processing files, spreadsheets, PowerPoint presentations, audio and video files, databases, and metadata, etc. ESI may be stored in the memory of computers, magnetic disks (such as computer hard drives and floppy disks), optical disks (such as DVDs and CDs), flash memory (such as "thumb" or "flash" drives), and may include ESI located on network drives (including F, G, and H drives), your work desktops, laptops, home computers, and PDAs (e.g., Blackberrys and smart phones), any punch card, disc or disc pack, zip disk, I-pod, digital media player, portable media player, portable hard drive, USB

2

storage device, or other type of portable-electronic storage media; any tape or other type of memory generally associated with computers and data processing (together with the programming instructions and other written or electronic material necessary to use such punch card, disc, or disc pack, tape, CD/DVD, zip disk, flash drive, floppy disk, I-pod, digital media player, portable media player, portable hard drive, USB storage device, or other type of portable electronic storage media, together with printouts of such punch card, disc, or disc pack, tape or other type of memory).

3.    The terms "relate to" or "pertain to" (or any form thereof) shall mean constituting, reflecting, representing, supporting, contradicting, referring to, stating, describing, recording, noting, embodying, containing, mentioning, studying, analyzing, discussing, evaluating or relevant to.

3

## Appendix B

## Information You Are Required to Submit to EPA

The following monitoring, results, and general information for the C. Reiss Coal Co. (C. Reiss) shall be installed/provided in accordance with the foregoing Request for Information pursuant to the Clean Air Act within the specified time frames:

Within 15 days from the date of receipt of this request, C. Reiss shall certify its intent to comply with this request.

Within 30 days from the date of receipt of this request, for the 5-year period up to the date of receipt of this request, provide the following:

1. For each year from 2010 through 2014, all records of the amount of each type of bulk solid material (coal, petroleum coke, limestone, salt, etc.):

    a. Unloaded from vessels, in tons per year (tpy);
    b. Unloaded from rail cars, in tpy;
    c. Unloaded from trucks, in tpy;
    d. Loaded onto vessels, in tpy;
    e. Loaded onto rail cars, in tpy; and
    f. Loaded onto trucks, in tpy.

2. The maximum height at which bulk material stockpiles are kept in warm weather and cold weather months;

3. All records of height measurements of each bulk material stockpile at the Facility;

4. A map showing the locations of the current fixed water cannons at the Facility, with height measurements of each;

5. The current number of portable water cannons at the Facility;

6. All records of the amount of water and other dust suppression material (e.g., surfactants or encrusting agents) applied, and the method with which it was applied (fixed or portable water cannon, water truck, spray bars, etc.):

    a. During bulk solid material loading/unloading;
    b. To unpaved roads at and around the Facility; and
    c. To active and inactive bulk solid material stockpiles at the Facility.

7. An explanation of how C. Reiss determines whether each type of bulk solid material is adequately wet to prevent fugitive dust emissions;

8.  All records of the moisture content of each type of bulk solid material received at the Facility, along with all records of testing that C. Reiss did to determine the moisture content;

9.  All records of wind speed and direction at the Facility measured or obtained by C. Reiss;

10. All records when loading/unloading occurred during high wind conditions (>45 miles per hour (mph) gusts, or >30 mph sustained speeds) at the Facility;

11. All records of when the bulk material stockpiles at the Facility were manipulated during high wind conditions;

12. All records of visible emission readings done at the Facility using EPA Method 9;

13. All records of the times when a sweeper truck was used at and around the Facility to prevent fugitive dust emissions; and

14. All records of inspections and maintenance of the dust control equipment employed at the Facility;

## $PM_{10}$ Monitors and Siting

15. Within 30 days of receipt of this request, C. Reiss shall submit proposed monitoring site locations at the Facility for EPA review and approval prior to establishing the monitoring sites;

16. Within 30 days of receipt of this request, C. Reiss shall submit to EPA a map showing the property lines of the Facility, the locations of nearby residences and industrial properties, and proposed locations of the monitoring sites;

17. Within 30 days of EPA approval of the monitoring site locations specified in paragraph 15, C. Reiss shall install, operate, and maintain at least one ambient monitoring site at the Facility that shall contain at least one continuous Federal Equivalent Method (FEM) real-time $PM_{10}$ monitor and a Federal Reference Method (FRM) $PM_{10}$ filter-based monitor operating every third day;

18. The monitoring sites and monitoring equipment shall conform with the following requirements:

    a.  The $PM_{10}$ real-time and filter-based instruments shall meet the specifications of FRM/FEM monitors on this list:
    www.epa.gov/ttn/amtic/files/ambient/criteria/reference-equivalent-methods-list.pdf;
    b.  C. Reiss shall follow all monitoring, siting, and quality assurance criteria in 40 CFR Part 58, Appendix E;

2

     c. $PM_{10}$ concentrations from filter-based sampling shall be determined according to
        40 CFR 50, Appendix J to Part 50 – "Reference Method for the Determination of
        Particulate Matter as $PM_{10}$ in the Atmosphere;"

     d. All data collected shall be consistent with units in the National Ambient Air Quality
        Standards for $PM_{10}$; and

     e. A data logger shall be attached to the monitors to record readings from the continuous
        monitors.

19. C. Reiss shall also follow the operating procedures identified in the "Quality Assurance
    Handbook for Air Pollution Measurement Systems" (located at
    http://www.epa.gov/ttn/amtic/qabook.html), 40 CFR Part 58, Appendix A, and any
    specified procedures in the manufacturer's maintenance manual for the units used to
    monitor $PM_{10}$;

20. C. Reiss shall be responsible for all operation and maintenance associated with the $PM_{10}$
    monitors. Maintenance shall include, at a minimum, the replacement of any equipment
    and cleaning on a schedule specified in the manufacturer's maintenance manual;

21. C. Reiss shall order and pay for any necessary replacement parts, accessories,
    maintenance, etc;

22. C. Reiss shall properly change the $PM_{10}$ filters in all sampling devices;

23. C. Reiss shall archive all filters from the $PM_{10}$ filter-based instruments for at least two
    years;

24. C. Reiss may apply to EPA to cease compliance with this Request, however, at least one
    year of information must be collected under this Request before such an application is
    made;

## Wind Speed and Direction Monitoring

25. C. Reiss shall install a meteorological tower at a location representative of local wind
    conditions. At a minimum, the meteorological tower must continuously measure and
    record wind speed and wind direction at one-hour intervals throughout the entire ambient
    monitoring period. C. Reiss shall correlate 1-hr and 24-hr ambient $PM_{10}$ measurements
    with wind speed and wind direction data to determine source direction and the effects of
    wind speed on $PM_{10}$ concentrations. The meteorological tower must also include
    calibrated ambient temperature and pressure instrumentation for purposes of determining
    corrected (actual) $PM_{10}$ concentrations as recorded by the monitors. C. Reiss shall
    maintain and/or submit reports and records in accordance with the paragraphs 26-34,
    below;

26. With respect to the meteorological monitoring site, C. Reiss shall follow the Quality
    Assurance Handbook for Air Pollution Measurement Systems Volume IV:
    Meteorological Measurements Version 2.0 (Final) found at:

Case 1:18-cv-00651-WCG   Filed 04/25/18   Page 21 of 42   Document 1

http://www.epa.gov/ttnamti1/files/ambient/met/Volume%20IV_Meteorological_Measurements.pdf;

27. The internal clocks of all $PM_{10}$ analyzers, data loggers, and the wind speed and wind direction data logger shall be synchronized to within 60 seconds of each other (local time and not adjusted for Daylight Savings Time) and shall be checked against a calibrated reference clock at least once every 30 days. Instrument clocks that are more or less than 60 seconds from the reference clock shall be reset to within 60 seconds of the reference clock. Each of these inconsistencies and each reset time shall be noted in the study log;

28. Continuous $PM_{10}$ data collected during wind speeds of less than 0.5 meters per second shall be segregated from other wind data for purposes of wind speed and wind direction correlations;

29. C. Reiss shall be responsible for maintenance associated with the meteorological tower on a schedule specified in the manufacturer's maintenance manual. C. Reiss shall order and pay for any necessary replacement parts, accessories, maintenance, etc.;

## General Requirements Applicable to All Requests

30. Within 30 days of EPA approval of the monitoring sites, C. Reiss shall submit a Quality Assurance Project Plan (QAPP) to EPA. The guidance document for writing a QAPP is "EPA Guidance for Quality Assurance Project Plans," EPA QA/G-5, EPA/600/R-02/009 - December 2002. The guidance is available at http://www.epa.gov/QUALITY/qs-docs/g5-final.pdf. Any measures identified by this information request should be incorporated into the QAPP;

31. C. Reiss shall provide EPA and/or the Wisconsin Department of Natural Resources access to the monitoring sites and respond to any inquiries regarding monitor siting, operations, or maintenance. In the event that an inspector or auditor identifies problems, C. Reiss shall take appropriate corrective actions. Any changes made to monitor siting, operations, or maintenance shall be approved by EPA prior to the change;

32. C. Reiss shall keep a daily log and monthly reports of the following information:

    a. Each site visit and operator activities;
    b. Any monitoring system downtime (date, time, duration, and reason) along with any corrective actions taken;
    c. Any possible interferences observed by the operator such as nearby construction or demolition; and
    d. Any calibration data provided by the manufacturer or performed by C. Reiss.

33. Hourly data from each monitor and meteorological monitoring site, and 24-hour data from gravimetric monitors shall be downloaded as ASCII comma-delimited files and provided to EPA on CD and by email every month. The files should have a single "header" row, with all following rows being individual records, and all columns being a

4

single variable according to the header row. All filter analysis data, including any specification data shall also be provided;

34. Monthly reports specified in paragraph 33 above shall be submitted to EPA for a period of one year. Each report is due within 14 days of the end of the month being reported. At the end of the one year time frame, EPA will re-evaluate and adjust, if necessary, this request. C. Reiss shall submit all documents due under this request and the monthly reports to cullen.raymond@epa.gov, cantello.nicole@epa.gov, r5enforcement@epa.gov, and:

> Attn: Compliance Tracker, AE-17J
> Air Enforcement and Compliance Assurance Branch
> U.S. Environmental Protection Agency
> Region 5
> 77 West Jackson Boulevard
> Chicago, Illinois 60604

## Appendix C

### Confidential Business and Personal Privacy Information

### Assertion Requirements

You may assert a business confidentiality claim covering any parts of the information requested in the attached Appendix B, as provided in 40 C.F.R. § 2.203(b).

Emission data provided under Section 114 of the CAA, 42 U.S.C. § 7414, is not entitled to confidential treatment under 40 C.F.R. Part 2.

"Emission data" means, with reference to any source of emissions of any substance into the air:

> Information necessary to determine the identity, amount, frequency, concentration or other characteristics (to the extent related to air quality) of any emission which has been emitted by the source (or of any pollutant resulting from any emission by the source), or any combination of the foregoing;

> Information necessary to determine the identity, amount, frequency, concentration or other characteristics (to the extent related to air quality) of the emissions which, under an applicable standard or limitation, the source was authorized to emit (including to the extent necessary for such purposes, a description of the manner and rate of operation of the source); and

> A general description of the location and/or nature of the source to the extent necessary to identify the source and to distinguish it from other sources (including, to the extent necessary for such purposes, a description of the device, installation, or operation constituting the source).

40 C.F.R. § 2.301(a)(2)(i)(A), (B) and (C).

To make a confidentiality claim, submit the requested information and indicate that you are making a claim of confidentiality. Any document for which you make a claim of confidentiality should be marked by attaching a cover sheet stamped or typed with a caption or other suitable form of notice to indicate the intent to claim confidentiality. The stamped or typed caption or other suitable form of notice should employ language such as "trade secret" or "proprietary" or "company confidential" and indicate a date, if any, when the information should no longer be treated as confidential. Information covered by such a claim will be disclosed by EPA only to the extent permitted and by means of the procedures set forth at Section 114(c) of the CAA and 40 C.F.R Part 2. Allegedly confidential portions of otherwise non-confidential documents should be clearly identified. EPA will construe the failure to furnish a confidentiality claim with your response to the Request to Provide Information as a waiver of that claim, and the information may be made available to the public without further notice to you.

## Determining Whether the Information is Entitled to Confidential Treatment

All confidentiality claims are subject to EPA verification and must be made in accordance with 40 C.F.R. § 2.208, which provides in part that you must satisfactorily show that you have taken reasonable measures to protect the confidentiality of the information and that you intend to continue to do so; that the information is not and has not been reasonably obtainable by legitimate means without your consent and that disclosure of the information is likely to cause substantial harm to your business's competitive position.

Pursuant to 40 C.F.R. Part 2, Subpart B, EPA may at any time send you a letter asking that you support your confidential business information (CBI) claim. If you receive such a letter, you must respond within the number of days specified by EPA. Failure to submit your comments within that time would be regarded as a waiver of your confidentiality claim or claims, and EPA may release the information. If you receive such a letter, EPA will ask you to specify which portions of the information you consider confidential **by page, paragraph, and sentence.** Any information not specifically identified as subject to a confidentiality claim may be disclosed to the requestor without further notice to you. For each item or class of information that you identify as being CBI, EPA will ask that you answer the following questions, giving as much detail as possible:

1. For what period of time do you request that the information be maintained as confidential, e.g., until a certain date, until the occurrence of a special event, or permanently? If the occurrence of a specific event will eliminate the need for confidentiality, please specify that event.

2. Information submitted to EPA becomes stale over time. Why should the information you claim as confidential be protected for the time period specified in your answer to question number 1?

3. What measures have you taken to protect the information claimed as confidential? Have you disclosed the information to anyone other than a governmental body or someone who is bound by an agreement not to disclose the information further? If so, why should the information still be considered confidential?

4. Is the information contained in any publicly available databases, promotional publications, annual reports or articles? Is there any means by which a member of the public could obtain access to the information? Is the information of a kind that you would customarily not release to the public?

5. Has any governmental body made a determination as to confidentiality of the information? If so, please attach a copy of the determination.

6. For each category of information claimed as confidential, **explain with specificity** why release of the information is likely to cause substantial harm to your competitive position. Explain the specific nature of those harmful effects, why they should be viewed as substantial and the causal relationship between disclosure and such harmful effects. How could your competitors make use of this information to your detriment?

2

7. Do you assert that the information is submitted on a voluntary or a mandatory basis? Please explain the reason for your assertion. If you assert that the information is voluntarily submitted information, explain whether and why disclosure of the information would tend to lessen the availability to EPA of similar information in the future.

8. Is there any other information you deem relevant to EPA's determination regarding your claim of business confidentiality?

If you receive a request for a substantiation letter from the EPA, **you bear the burden of substantiating your confidentiality claim**. Conclusory allegations will be given little or no weight in the determination. In substantiating your CBI claim(s), you must bracket all text so claimed and mark it "CBI." Information so designated will be disclosed by EPA only to the extent allowed by and by means of the procedures set forth in 40 C.F.R. Part 2, Subpart B. If you fail to claim the information as confidential, it may be made available to the public without further notice to you.

### Personal Privacy Information

Please segregate any personnel, medical and similar files from your responses and include that information on a separate sheet(s) marked as "Personal Privacy Information." Disclosure of such information to the general public may constitute an invasion of privacy.

3

## CERTIFICATE OF MAILING

I, Loretta Shaffer, certify that I sent a Request to Provide Information Pursuant to the

Clean Air Act by Certified Mail, Return Receipt Requested, to:

Christian Zuidmulder
Facility Manager
The C. Reiss Coal Co.
111 West Mason Street
Green Bay, Wisconsin 54303

I also certify that I sent a copy of the Request to Provide Information Pursuant to the

Clean Air Act by First-Class Mail to:

Imelda Hofmeister
Wisconsin Department of Natural Resources
625 East County Road Y, Suite 700
Oshkosh, Wisconsin 54901

Bill Baumann
Chief
Compliance and Enforcement Section
Bureau of Air Management
Wisconsin Department of Natural Resources
101 South Webster Street
P.O. Box 7921 (A.M17)
Madison, Wisconsin 53707-7921

on the 16ᵗʰ day of March 2015.

_Kathy Jones_

for Loretta Shaffer
Program Technician
AECAB, PAS

Certified Mail Receipt Number: 7011 1150 0000 2440 6370

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**
**GREEN BAY DIVISION**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| C. REISS COAL COMPANY LLC, | ) |
| | ) |
| Defendant | ) |
| _____ | ) |

**COMPLAINT EXHIBIT 2**

**CLEAN AIR ACT SECTION 114 INFORMATION REQUEST**
**C. REISS COAL CO.**

**DULUTH FACILITY**

## UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
## REGION 5

IN THE MATTER OF:

The C. Reiss Coal Company
**Duluth Dock**
50th Avenue West and LeSure
Duluth, Minnesota 55816

ATTENTION:

Robert Valley
Plant Manager

### Request to Provide Information Pursuant to the Clean Air Act

The U.S. Environmental Protection Agency is requiring The C. Reiss Coal Company

(Reiss or you) to submit certain information about the facility at 50th Avenue West and LeSure,

Duluth, Minnesota. Appendix A provides the instructions needed to answer this information

request, including instructions for electronic submissions. Appendix B specifies the information

that you must submit. You must send this information to us according to the schedule provided

in Appendix B.

We are issuing this information request under Section 114(a) of the Clean Air Act (the

CAA), 42 U.S.C. § 7414(a). Section 114(a) authorizes the Administrator of EPA to require the

submission of information and monitoring. The Administrator has delegated this authority to the

Director of the Air and Radiation Division, Region 5.

Reiss owns and operates an emission source at the Duluth, Minnesota facility. We are

requesting this information to determine whether your emission source is complying with the

Minnesota State Implementation Plan, requirements of your operating permit, and the CAA.

Reiss must send all required information to:

Attn: Compliance Tracker, AE-17J
Air Enforcement and Compliance Assurance Branch
U.S. Environmental Protection Agency
Region 5
77 W. Jackson Boulevard
Chicago, Illinois 60604

and also submit the information via electronic mail to miller.patrick@epa.gov and to cantello.nicole@epa.gov.

Reiss must submit all required information under an authorized signature with the

following certification:

I certify under penalty of law that I have examined and am familiar with the information in the enclosed documents, including all attachments. Based on my inquiry of those individuals with primary responsibility for obtaining the information, I certify that the statements and information are, to the best of my knowledge and belief, true and complete. I am aware that there are significant penalties for knowingly submitting false statements and information, including the possibility of fines or imprisonment pursuant to Section 113(c)(2) of the Clean Air Act and 18 U.S.C. §§ 1001 and 1341.

As explained more fully in Appendix C, you may assert a claim of business

confidentiality under 40 C.F.R. Part 2, Subpart B, for any part of the information you submit to

us. Information subject to a business confidentiality claim is available to the public only to the

extent, and by means of the procedures, set forth at 40 C.F.R. Part 2, Subpart B. If you do not

assert a business confidentiality claim when you submit the information, EPA may make this

information available to the public without further notice. You should be aware, moreover, that

pursuant to Section 114(c) of the CAA and 40 C.F.R. § 2.301(a) and (f), emissions data,

standards and limitations are not entitled to confidential treatment and shall be made available to

the public notwithstanding any assertion of a business confidentiality claim. Appendix C

provides additional information regarding the meaning and scope of the term "emissions data."

2

This information request is not subject to the Paperwork Reduction Act, 44 U.S.C. § 3501 *et seq.*, because it seeks the collection of information from The C. Reiss Coal Company, a specific entity, as part of a discrete administrative action or investigation.

We may use any information submitted in response to this request in an administrative, civil or criminal action.

Failure to comply fully with this information request may subject Reiss to an enforcement action under Section 113 of the CAA, 42 U.S.C. § 7413.

You should direct any questions about this information request to Patrick Miller at 312.886.4044 or via electronic mail at miller.patrick@epa.gov.

_____     3/4/15

Date

_____

George T. Czerniak
Director
Air and Radiation Division

3

## Appendix A

When providing the information requested in Appendix B, use the following instructions and definitions.

## Instructions

1.  Provide a separate narrative response to each question and subpart of a question set forth in Appendix B.

2.  Precede each answer with the number of the question to which it corresponds and at the end of each answer, identify the person(s) who provided information used or considered in responding to that question, as well as each person consulted in the preparation of that response.

3.  Indicate on each document produced, or in some other reasonable manner, the number of the question to which it corresponds.

4.  When a response is provided in the form of a number, specify the units of measure of the number in a precise manner.

5.  Where information or documents necessary for a response are neither in your possession nor available to you, indicate in your response why the information or documents are not available or in your possession, and identify any source that either possesses or is likely to possess the documents or information.

6.  If information not known or not available to you as of the date of submission later becomes known or available to you, you must supplement your response. Moreover, should you find at any time after the submission of your response that any portion of the submitted information is false or incorrect, you must notify EPA as soon as possible.

## Electronic Submissions

To aid in our electronic recordkeeping efforts, we request that you provide all documents responsive to this information request in an electronic format according to paragraphs 1 through 6, below. These submissions are in lieu of hard copy.

1.  Provide all responsive documents in Portable Document Format (PDF) or similar format, unless otherwise requested in specific questions. If the PDFs are scanned images, perform at least Optical Character Recognition (OCR) for "image over text" to allow the document to be searchable. Submitters providing secured PDFs should also provide unsecured versions for EPA use in repurposing text.

2.  When specific questions request data in electronic spreadsheet form, provide the data and corresponding information in editable Excel format, and not in image

1

format. If Excel format are not available, then the format should allow for data to be used in calculations by a standard spreadsheet program such as Excel.

3. Provide submission on physical media such as compact disk, flash drive or other similar item.

4. Provide a table of contents for each compact disk or flash drive containing electronic documents submitted in response to our request so that each document can be accurately identified in relation to your response to a specific question. *We recommend the use of electronic file folders organized by question number.* In addition, each compact disk or flash drive should be labeled appropriately (*e.g.*, Company Name, Disk 1 of 4 for Information Request Response, Date of Response).

5. Documents claimed as confidential business information (CBI) must be submitted on separate disks/drives apart from the non-confidential information. This will facilitate appropriate records management and appropriate handling and protection of the CBI. Please follow the instructions in Appendix C for designating information as CBI.

6. Certify that the attached files have been scanned for viruses and indicate what program was used.

## Definitions

All terms used in this information request have their ordinary meaning unless such terms are defined in the CAA, 42 U.S.C. §§ 7401 *et seq.*, and the Minnesota State Implementation Plan.

1. The terms "document" and "documents" shall mean any object that records, stores, or presents information, and includes writings, memoranda, records, or information of any kind, formal or informal, whether wholly or partially handwritten or typed, whether in computer format, memory, or storage device, or in hardcopy, including any form or format of these. If in computer format or memory, each such document shall be provided in translation to a form useable and readable by EPA, with all necessary documentation and support. All documents in hard copy should also include attachments to or enclosures with any documents.

2. The terms "relate to" or "pertain to" (or any form thereof) shall mean constituting, reflecting, representing, supporting, contradicting, referring to, stating, describing, recording, noting, embodying, containing, mentioning, studying, analyzing, discussing, evaluating or relevant to.

## Appendix B

### Information You Are Required to Submit to EPA

The C. Reiss Coal Company (Reiss) must submit the following information pursuant to Section 114(a) of the CAA, 42 U.S.C. § 7414(a) according to the schedule provided below for your facility located at 50th Avenue West and LeSure in Duluth, Minnesota.

1.  Within 10 days of receipt of this Request, Reiss shall submit a written certification of its intent to comply with this Request.

For Items 2 – 5. submit the following information within thirty (30) calendar days of receipt of this request.

2.  Provide the following information for the time period of January 1, 2013 to January 31, 2015:

    a.  Each bulk solid material handled;

    b.  The annual tonnage throughput for each bulk solid material;

    c.  The handling methods used to receive, store and ship each bulk solid material;

    d.  Identify which bulk solid materials are screened;

    e.  Identify any dust controls used to minimize emissions from stockpiles for each bulk solid material, such as dust suppressants or tarp covers; and

    f.  The maximum onsite storage for each bulk solid material.

3.  Provide all moisture content test records as required by Reiss's Air Emission Permit (Permit Number 13700071-001), for emission source GP 001- Screening, for each different feed material screened for the time period of January 1, 2013 through January 31, 2015. The moisture content test records shall include the following information:

    a.  The method used to determine moisture;

    b.  The results;

    c.  The date and time; and

    d.  And name of person performing the each test.

1

4.  If there are no moisture content test records during the time period identified in Item 2, provide the most recent moisture content test records for each different feed material screened. The moisture test records shall include all of the information listed in Item 3.

5.  Provide all quarterly reports, as required by Reiss's Air Emission Permit (Permit Number 13700071-001), for emission source GP 002- Fugitive Sources, for the time period of January 1, 2013 through January 31, 2015, that include the following information:

    a.  The hours each day in which stockpile bulk solid materials were handled without the operation of the wet suppression system; and

    b.  The periods of time in which the mobile water truck and/or sprinklers were not available.

For Items 6-25, the following monitoring, results, and general information for shall be installed/provided within the specified time frames:

**PM$_{10}$ Monitors and Siting**

6.  Reiss shall install ambient air monitors for particulate matter (PM) at its facility.

7.  Within 30 days of receipt of this information request, Reiss shall submit at least two possible monitoring site locations and a single proposed location for EPA review and approval prior to establishing the monitoring site. The proposal for monitoring site locations shall include a map showing the property lines of the facility, the locations of nearby residences and industrial properties, and proposed locations of the monitoring sites. The monitoring site shall be placed in the prevailing downwind location. Reiss shall submit an annual wind rose and four seasonal wind roses showing wind patterns as reported for the past five years at the nearest available meteorological station

8.  Within 30 days of EPA approval of the monitoring site location specified in Item 7, Reiss shall install, operate, and maintain at least one ambient monitoring site at the facility. The site shall contain at least one continuous Federal Equivalent Method (FEM) real-time PM$_{10}$ monitor. The site shall contain at least one Federal Reference Method (FRM) PM$_{10}$ filter-based monitor operating every third day.

9.  The monitoring site and monitoring equipment shall conform with the following requirements:

    a.  The PM$_{10}$ real-time monitor shall meet all of the specifications of FRM/FEM monitors on this list;
        www.epa.gov/ttn/amtic/files/ambient/criteria/reference-equivalent-methods-list.pdf;

2

Case 1:18-cv-00651-WCG   Filed 04/25/18   Page 35 of 42   Document 1

4.  If there are no moisture content test records during the time period identified in Item 2, provide the most recent moisture content test records for each different feed material screened. The moisture test records shall include all of the information listed in Item 3.

5.  Provide all quarterly reports, as required by Reiss's Air Emission Permit (Permit Number 13700071-001), for emission source GP 002- Fugitive Sources, for the time period of January 1, 2013 through January 31, 2015, that include the following information:

    a.  The hours each day in which stockpile bulk solid materials were handled without the operation of the wet suppression system; and

    b.  The periods of time in which the mobile water truck and/or sprinklers were not available.

For Items 6-25, the following monitoring, results, and general information for shall be installed/provided within the specified time frames:

**PM$_{10}$ Monitors and Siting**

6.  Reiss shall install ambient air monitors for particulate matter (PM) at its facility.

7.  Within 30 days of receipt of this information request, Reiss shall submit at least two possible monitoring site locations and a single proposed location for EPA review and approval prior to establishing the monitoring site. The proposal for monitoring site locations shall include a map showing the property lines of the facility, the locations of nearby residences and industrial properties, and proposed locations of the monitoring sites. The monitoring site shall be placed in the prevailing downwind location. Reiss shall submit an annual wind rose and four seasonal wind roses showing wind patterns as reported for the past five years at the nearest available meteorological station

8.  Within 30 days of EPA approval of the monitoring site location specified in Item 7, Reiss shall install, operate, and maintain at least one ambient monitoring site at the facility. The site shall contain at least one continuous Federal Equivalent Method (FEM) real-time PM$_{10}$ monitor. The site shall contain at least one Federal Reference Method (FRM) PM$_{10}$ filter-based monitor operating every third day.

9.  The monitoring site and monitoring equipment shall conform with the following requirements:

    a.  The PM$_{10}$ real-time monitor shall meet all of the specifications of FRM/FEM monitors on this list;
        www.epa.gov/ttn/amtic/files/ambient/criteria/reference-equivalent-methods-list.pdf;

Case 1:18-cv-00651-WCG   Filed 04/25/18   Page 35 of 42   Document 1

b. Reiss shall follow all monitoring, siting, and quality assurance criteria in 40 CFR Part 58, Appendix E;

c. $PM_{10}$ concentrations from filter-based sampling shall be determined according to 40 CFR Part 50, Appendix J – "Reference Method for the Determination of Particulate Matter as $PM_{10}$ in the Atmosphere";

d. All data collected shall be consistent with units in the National Ambient Air Quality Standards for $PM_{10}$; and

e. A data logger shall be attached to the monitors to record readings from the continuous monitors.

10. Reiss shall follow all monitoring, siting, and quality assurance criteria as detailed in 40 CFR Part 58, Appendix A "Quality Assurance Requirements for SLAMS, SPMs, and PSD Air Monitoring" and Appendix D "Network Design Criteria for Ambient Air Quality Monitoring."

11. The monitors shall be operated in accordance with operating procedures identified in the Quality Assurance Handbook for Air Pollution Measurement Systems "Volume I: A Field Guide to Environmental Quality Assurance" and "Volume II: Ambient Air Quality Monitoring Program."

12. Reiss shall be responsible for all operation and maintenance associated with the $PM_{10}$ monitors. Reiss shall properly change the $PM_{10}$ filters in all sampling devices. Maintenance shall include, at a minimum, the replacement of any equipment and cleaning on a schedule specified in the manufacturer's maintenance manual.

13. Reiss shall order and pay for any necessary replacement parts, accessories, maintenance, etc.

14. Reiss shall archive all filters from the $PM_{10}$ filter-based instruments for at least two years.

15. Monitoring shall take place for at least one year from the date of installation.

## Wind Speed and Direction Monitoring

16. Reiss shall install a meteorological tower at a location representative of local wind conditions. At a minimum, the meteorological tower must continuously measure and record wind speed and wind direction at one-hour intervals throughout the entire ambient monitoring period. Reiss shall correlate 1-hr and 24-hr ambient $PM_{10}$ measurements with wind speed and wind direction data to determine source direction and the effects of wind speed on $PM_{10}$ concentrations (e.g., a pollution wind rose that displays the pollution concentration and wind direction frequency).

3

The meteorological tower must also include calibrated ambient temperature and pressure instrumentation for purposes of determining corrected (actual) $PM_{10}$ concentrations as recorded by the monitors. Reiss shall maintain and/or submit reports and records in accordance with the paragraphs 17-25, below.

17. With respect to the meteorological monitoring site, Reiss shall follow the Quality Assurance Handbook for Air Pollution Measurement Systems Volume IV: Meteorological Measurements Version 2.0 (Final) found at: http://www.epa.gov/ttnamti1/files/ambient/met/Volume%20IV_Meteorological_ Measurements.pdf

18. The internal clocks of all $PM_{10}$ analyzers, data loggers, and the wind speed and wind direction data logger shall be synchronized to within 60 seconds of each other (local time and not adjusted for Daylight Savings Time) and shall be checked against a calibrated reference clock at least once every 30 days. Instrument clocks that are more or less than 60 seconds from the reference clock shall be reset to within 60 seconds of the reference clock. Each of these inconsistencies and each reset time shall be noted in the study log.

19. Reiss shall be responsible for maintenance associated with the meteorological tower on a schedule specified in the manufacturer's maintenance manual. Reiss shall order and pay for any necessary replacement parts, accessories, maintenance, etc.

**General Requirements Applicable to All Requests**

20. Within 30 days of EPA approval of the monitoring sites, Reiss shall submit a Quality Assurance Project Plan (QAPP) to EPA. The guidance document for writing a QAPP is "EPA Guidance for Quality Assurance Project Plans," EPA QA/G-5, EPA/600/R-02/009 - December 2002. The guidance is available at http://www.epa.gov/QUALITY/qs-docs/g5-final.pdf.

21. Reiss shall provide EPA access to the monitoring sites and respond to any inquiries regarding monitor siting, operations, or maintenance. In the event that an inspector or auditor identifies problems, Reiss shall take appropriate corrective actions. Any changes made to monitor siting, operations, or maintenance shall be approved by EPA prior to the change.

22. Reiss shall keep a daily log and monthly reports of the following information:

    a. Each site visit and operator activities;

    b. Any monitoring system downtime (date, time, duration, and reason) along with any corrective actions taken;

4

c. Any possible interferences observed by the operator such as nearby construction or demolition; and

d. Any calibration data provided by the manufacturer or performed by Reiss.

23. Hourly data from each monitor and meteorological monitoring site, and 24-hour data from gravimetric monitors shall be downloaded as ASCII comma-delimited files and provided to EPA on CD every month. The files should have a single "header" row, with all following rows being individual records, and all columns being a single variable according to the header row. All filter analysis data, including any specification data shall also be provided.

24. Monthly reports and data specified in Items 22 and 23 above shall be submitted to EPA for a period of at least one year. Each report is due within 14 days of the end of the month being reported. At the end of 12 months, Reiss may apply to EPA for a modification or termination of this request. At that time, EPA will re-evaluate and adjust, if necessary, the Section 114(a) request.

25. Reiss shall submit these monthly reports to:

> Attn: Compliance Tracker, AE-17J
> Air Enforcement and Compliance Assurance Branch
> U.S. Environmental Protection Agency
> Region 5
> 77 West Jackson Boulevard
> Chicago, Illinois 60604

and also submit the monthly reports via electronic mail to miller.patrick@epa.gov

and to cantello.nicole@epa.gov.

5

## Appendix C

## Confidential Business and Personal Privacy Information

### Assertion Requirements

You may assert a business confidentiality claim covering any parts of the information requested in the attached Appendix B, as provided in 40 C.F.R. § 2.203(b).

Emission data provided under Section 114 of the CAA, 42 U.S.C. § 7414, is not entitled to confidential treatment under 40 C.F.R. Part 2.

"Emission data" means, with reference to any source of emissions of any substance into the air:

> Information necessary to determine the identity, amount, frequency, concentration or other characteristics (to the extent related to air quality) of any emission which has been emitted by the source (or of any pollutant resulting from any emission by the source), or any combination of the foregoing;

> Information necessary to determine the identity, amount, frequency, concentration or other characteristics (to the extent related to air quality) of the emissions which, under an applicable standard or limitation, the source was authorized to emit (including to the extent necessary for such purposes, a description of the manner and rate of operation of the source); and

> A general description of the location and/or nature of the source to the extent necessary to identify the source and to distinguish it from other sources (including, to the extent necessary for such purposes, a description of the device, installation, or operation constituting the source).

40 C.F.R. § 2.301(a)(2)(i)(A), (B) and (C).

To make a confidentiality claim, submit the requested information and indicate that you are making a claim of confidentiality. Any document for which you make a claim of confidentiality should be marked by attaching a cover sheet stamped or typed with a caption or other suitable form of notice to indicate the intent to claim confidentiality. The stamped or typed caption or other suitable form of notice should employ language such as "trade secret" or "proprietary" or "company confidential" and indicate a date, if any, when the information should no longer be treated as confidential. Information covered by such a claim will be disclosed by EPA only to the extent permitted and by means of the procedures set forth at Section 114(c) of the CAA and 40 C.F.R Part 2. Allegedly confidential portions of otherwise non-confidential documents should be clearly identified. EPA will construe the failure to furnish a confidentiality claim with your response to the Request to Provide Information as a waiver of that claim, and the information may be made available to the public without further notice to you.

1

## Determining Whether the Information is Entitled to Confidential Treatment

All confidentiality claims are subject to EPA verification and must be made in accordance with 40 C.F.R. § 2.208, which provides in part that you must satisfactorily show that you have taken reasonable measures to protect the confidentiality of the information and that you intend to continue to do so; that the information is not and has not been reasonably obtainable by legitimate means without your consent and that disclosure of the information is likely to cause substantial harm to your business's competitive position.

Pursuant to 40 C.F.R. Part 2, Subpart B, EPA may at any time send you a letter asking that you support your confidential business information (CBI) claim. If you receive such a letter, you must respond within the number of days specified by EPA. Failure to submit your comments within that time would be regarded as a waiver of your confidentiality claim or claims, and EPA may release the information. If you receive such a letter, EPA will ask you to specify which portions of the information you consider confidential **by page, paragraph, and sentence.** Any information not specifically identified as subject to a confidentiality claim may be disclosed to the requestor without further notice to you. For each item or class of information that you identify as being CBI, EPA will ask that you answer the following questions, giving as much detail as possible:

1. For what period of time do you request that the information be maintained as confidential, *e.g.*, until a certain date, until the occurrence of a special event, or permanently? If the occurrence of a specific event will eliminate the need for confidentiality, please specify that event.

2. Information submitted to EPA becomes stale over time. Why should the information you claim as confidential be protected for the time period specified in your answer to question number 1?

3. What measures have you taken to protect the information claimed as confidential? Have you disclosed the information to anyone other than a governmental body or someone who is bound by an agreement not to disclose the information further? If so, why should the information still be considered confidential?

4. Is the information contained in any publicly available databases, promotional publications, annual reports or articles? Is there any means by which a member of the public could obtain access to the information? Is the information of a kind that you would customarily not release to the public?

5. Has any governmental body made a determination as to confidentiality of the information? If so, please attach a copy of the determination.

6. For each category of information claimed as confidential, **explain with specificity** why release of the information is likely to cause substantial harm to your competitive position. Explain the specific nature of those harmful effects, why they should be viewed as substantial and the causal relationship between disclosure and such harmful effects. How could your competitors make use of this information to your detriment?

2

7.　Do you assert that the information is submitted on a voluntary or a mandatory basis? Please explain the reason for your assertion. If you assert that the information is voluntarily submitted information, explain whether and why disclosure of the information would tend to lessen the availability to EPA of similar information in the future.

8.　Is there any other information you deem relevant to EPA's determination regarding your claim of business confidentiality?

If you receive a request for a substantiation letter from the EPA, **you bear the burden of substantiating your confidentiality claim**. Conclusory allegations will be given little or no weight in the determination. In substantiating your CBI claim(s), you must bracket all text so claimed and mark it "CBI." Information so designated will be disclosed by EPA only to the extent allowed by and by means of the procedures set forth in 40 C.F.R. Part 2, Subpart B. If you fail to claim the information as confidential, it may be made available to the public without further notice to you.

## Personal Privacy Information

Please segregate any personnel, medical and similar files from your responses and include that information on a separate sheet(s) marked as "Personal Privacy Information." Disclosure of such information to the general public may constitute an invasion of privacy.

## CERTIFICATE OF MAILING

I, Loretta Shaffer, certify that I sent a Request to Provide Information Pursuant to the

Clean Air Act by Certified Mail, Return Receipt Requested, to:

Robert Valley
The C. Reiss Coal Company
Duluth Dock
50th Avenue West and LeSure
Duluth, Minnesota 55816

I also certify that I sent a copy of the Request to Provide Information Pursuant to the

Clean Air Act by First-Class Mail to:

Katie Koelfgen
Air Quality Division
Minnesota Pollution Control Agency
520 LaFayette Road North
St. Paul, Minnesota 55155

On the 5th day of March 2015.

Loretta Shaffer, Program Technician
AECAB, PAS

CERTIFIED MAIL RECEIPT NUMBER: 7011 1150 0000 2640 6185

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

Place an "X" in the appropriate box (required):   ☒ Green Bay Division      ☐ Milwaukee Division

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| UNITED STATES OF AMERICA | C. REISS COAL COMPANY |

| **(b)** County of Residence of First Listed Plaintiff _____ | County of Residence of First Listed Defendant _____ |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| NIGEL COONEY, U.S. DOJ | JENNIFER SMOKELIN, REED SMITH LLP |
| 601 D ST NW, WASHINGTON DC 20044 / 202-514-3145 | 225 5TH AVE, PITTSBURGH PA 15222 / 412-288-3131 |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1   U.S. Government
       Plaintiff

☐ 2   U.S. Government
       Defendant

☐ 3   Federal Question
       *(U.S. Government Not a Party)*

☐ 4   Diversity
       *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                            *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*                    Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☒ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original
      Proceeding

☐ 2  Removed from
      State Court

☐ 3  Remanded from
      Appellate Court

☐ 4  Reinstated or
      Reopened

☐ 5  Transferred from
      Another District
      *(specify)*

☐ 6  Multidistrict
      Litigation -
      Transfer

☐ 8  Multidistrict
      Litigation -
      Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Clean Air Act, 42 USC Sec. 7413(b)

Brief description of cause:
Action to seek information pursuant to Clean Air Act Sec. 114, 42 USC Sec. 7414

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
   UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____          DOCKET NUMBER _____

DATE _____          SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT #  _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use
  **(b)**   **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the
  **(c)**   **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here. United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.**  (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**   **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: <u>Nature of Suit Code Descriptions.</u>

**V.**   **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**   **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**   **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.